IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY THOMAS ARTHURS,<br>     Plaintiff<br><br>  vs.<br><br>JEFFREY A. BEARD, Secretary, Commonwealth of Pennsylvania Department of Corrections, in his individual capacity; SUPERINTENDENT WILSON, Superintendent of SCI-Pittsburgh, in his individual capacity; WILLIAM STICKMAN, Superintendent, SCI-Pittsburgh, in his individual capacity; THOMAS BENDER, Records Supervisor, SCI-Pittsburgh, in his individual capacity; ROCHELLE Y. KING, Records Supervisor, SCI-Pittsburgh, Pennsylvania Department of Corrections, in her individual capacity; RHONDA HOUSE, Records Specialist, Pennsylvania Department of Corrections, SCI-Pittsburgh, in her individual capacity; VALERIE HALE, Records Supervisor, SCI-Pittsburgh, in her individual capacity; JUSTIN TIMOTHY SCHAUP, Records Specialist, SCI-Fayette, Pennsylvania Department of Corrections, in his individual capacity; SARAH A. TRAVIS-JAMISON, Deputy Superintendent, SCI-Fayette, Pennsylvania Department of Corrections, in her individual capacity; CATHERINE C. McVEY, Chairman of the Pennsylvania Board of Probation and Parole, in her individual capacity; DANIEL FEDENIS, Parole Supervisor, Pennsylvania Board of Probation and Parole, in his individual capacity; THOMAS DICKEY, Parole Supervisor at SCI-Pittsburgh, Pennsylvania Board of Probation and Parole, in his individual capacity,<br>     Defendants | Civil Action No. 07-862<br>Judge Joy Flowers Conti/<br>Magistrate Judge Amy Reynolds Hay<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Re Dkt. [9] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the motion to dismiss, Dkt. [9], be denied.

REPORT

Jeffrey Thomas Arthurs ("Plaintiff"), a former prisoner, represented by retained counsel, has filed a civil rights action pursuant to 42 U.S.C § 1983, against twelve Defendants, alleging that he was kept incarcerated well beyond his court imposed sentences. The twelve Defendants are all either employed by the Pennsylvania Department of Corrections or by the Pennsylvania Board of Probation and Parole.

The twelve Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The Defendants seek dismissal based on the contentions that Plaintiff has failed to sufficiently allege their personal involvement in the wrongdoing, and failed to allege anything more than negligence. Because the complaint sufficiently alleges personal involvement on the part of the Defendants either based upon their personally failing to correct sentencing calculation errors or based upon their promulgation/enforcement of policies that created a great risk of miscalculations, the motion to dismiss cannot be granted on the ground of lack of personal involvement. In addition, because the complaint sufficiently alleges deliberate indifference on the part of the Defendants to the fact that Plaintiff's sentence was wrongly credited, the motion cannot be granted on the basis of failure to sufficiently allege the requisite culpable state of mind which the Defendants were required to possess in order to make out a constitutional violation. Because the allegations of the complaint are sufficient to state a claim, the motion to dismiss should be denied.

**Relevant Procedural History**

Plaintiff's counsel filed a complaint pursuant to 42 U.S.C. § 1983. Dkt. [1]. The moving Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), Dkt. [9], and a brief in support. Dkt. [10]. Plaintiff's counsel filed a brief in opposition, Dkt. [12].

**Fed.R.Civ.P. 12(b)(6) Standard**

In <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007), the Supreme Court recently summarized the legal standards governing motions to dismiss under Rule 12(b)(6) as follows:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. ----, ----, 127 S.Ct. 1955, 167 L.Ed.2d 929, ---- - ---- (2007) (slip op., at 7-8) (<u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. <u>Bell Atlantic Corp.</u>, <u>supra</u>, at ----, 127 S.Ct. 1955 (slip op., at 8-9) (<u>citing</u> <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508, n. 1(2002) . . . .

Given the liberal notice pleading standards of Fed.R.Civ.P. 8, the grant of a motion to dismiss should be rare. <u>St. Joseph's Hosp., Inc. v. Hospital Corp. of America</u>, 795 F.2d 948, 953 (11th Cir. 1986) ("Although authorized by the Federal Rules of Civil Procedure, the liberal rules as to the sufficiency of a complaint make it a rare case in which a motion [to dismiss] should be granted."). The question to be resolved is: whether, taking the factual allegations and all reasonable inferences to be drawn therefrom, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-1965 (2007).

**Discussion**

Because the factual allegations in this case are not easily summarized, we set forth below those allegations that are central to our discussion:

**OPERATIVE FACTS**

16. On December 4th 1994, Plaintiff ARTHURS was paroled from an eighteen (18) to sixty (60) months sentence at a state correctional institution, with a balance of thirty-four (34) months remaining on the maximum sentence. *See*, Order to Release on Parole/Re-parole attached hereto as Exhibit "A", and made a part hereof by this reference.

17. On January 29, 1995, Plaintiff ARTHURS was arrested and charged with aggravated assault and other charges in the Court of Common Pleas of Allegheny County. *See*, Disposition Report, attached hereto as Exhibit "B", and made a part hereof by this reference.

18. That on January 29th 1995, Plaintiff ARTHURS, as a result of the aforementioned charges, was detained at SCI-Pittsburgh on a Parole Violation issued by the Pennsylvania Board of Probation and Parole.

19. While Plaintiff ARTHURS was in custody, on February 8, 1995, Plaintiff ARTHURS was charged with robbery in Westmoreland County, Pennsylvania. *See*, Disposition Report, attached hereto as Exhibit "C", and made a part hereof by this reference.

20. On February 15th 1995, federal authorities issued an arrest warrant and charged Plaintiff ARTHURS with robbery. See, Disposition Report, attached hereto as Exhibit "C".

21. On February 23rd 1995, Plaintiff ARTHURS was transported pursuant to a Writ of Habeas Corpus Prosequendum to appear before Federal Judge Donetta Ambrose. See, Exhibit "D" at ¶1, attached hereto and made a part hereof by this reference.

22. On July 20th 1995 Plaintiff ARTHURS, pursuant to a plea agreement, was sentenced by the Honorable Donetta Ambrose to a period of Seventy-Two (72) months of incarceration, and Three (3) years of supervised release, effective July 20th 1995. See, Exhibit E", attached hereto and made a part hereof by this reference.

23. That Plaintiff ARTHURS was returned to state custody and the U.S. Marshals lodged a detainer against Plaintiff ARTHURS. See, Exhibit "F", attached hereto and made a part hereof by this reference.

24. That on August 1, 1995, Plaintiff ARTHURS was sentenced by Judge McCormick, Court of Common Pleas of Westmoreland County, Pennsylvania, to a period of incarceration of Three (3) to Six (6) years running "**concurrent to Federal sentence** pursuant to a plea agreement." See, Order of Court/Sentence, attached hereto as Exhibit "G", *emphasis added*, and made a part hereof by this reference.

25. That on November 13, 1995, Plaintiff ARTHURS was sentenced under a plea agreement by Judge Little, Court of Common Pleas of Allegheny County, Pennsylvania, to a period of incarceration of Three (3) to Six (6) years running "**concurrent to [the] sentence now running.**" See, Sentence Order, attached hereto as Exhibit "H" and Sentence Orders, emphasis added, attached hereto as Exhibit "I", and made a part hereof by this reference.

26. Subsequent to Plaintiff ARTHURS' federal conviction and Westmoreland County conviction, the Pennsylvania Board of Probation and Parole (hereinafter referred to as "PaBPP") committed Plaintiff ARTHURS as a convicted parole violator to serve forty (40) months of backtime "**when available**". See, the PaBPP Decision attached hereto as Exhibit "J" and the PaBPP Decision attached hereto as Exhibit "K", and made a part hereof by this reference.

27. That, Plaintiff ARTHURS only owed Thirty-Four (34) months of back-time in order to serve the maximum of his original Eighteen (18) to Thirty-Six (36) month sentence.

28. That, accordingly, Plaintiff ARTHURS' sentence with respect to the serving the remainder of his original sentence, commenced on January 29th 1995 when the Pennsylvania Board of Probation and Parole had originally filed a Probation Detainer on Plaintiff ARTHURS, effectively incarcerating him in SCI-Pittsburgh.

29. That on January 10, 2001, upon being informed that Plaintiff ARTHURS was serving his state sentence, the Federal Bureau of Prisons ("BOP") informed state corrections officers that Plaintiff ARTHURS was deemed to have completed federal sentence on April 21, 2000.

30. That by a recalculation decision mailed on June 27, 2001, the PaBPP directed that Plaintiff ARTHURS' back-time commenced from April 21, 2000. See, Notice of PaBPP Decision, attached hereto as Exhibit "L", and made a part hereof by this reference.

31. That the PaBPP calculated that Plaintiff ARTHURS' back-time, would, accordingly, end on February 21, 2003. See, Exhibit "L".

32. That according to the PaBPP recalculation Plaintiff ARTHURS would commence serving his Three (3) to Six (6) year state sentence on February 21, 2003.

33. That according to said recalculation, the PaBPP was mandating that Plaintiff ARTHURS serve his federal sentence, back-time, and then Plaintiff ARTHURS' state sentence, in effect, running Plaintiff's sentences consecutively rather than concurrently as directed by the sentencing judges.

**DEFENDANTS' REFUSAL TO REMEDY INJUSTICE**

34. That in September 1996, Plaintiff ARTHURS notified Defendant BENDER, verbally, of the miscalculation of Plaintiff ARTHURS' sentence and that Defendant BENDER indicated to the Plaintiff that he, Defendant BENDER, would look into the matter and rectify said miscalculation.

35. That, Defendant BENDER never took any effectual action in order to remedy said miscalculation, but knowingly misrepresented the status of Plaintiff ARTHURS' sentences, on the sentence calculation maintained by the Pennsylvania Department of Corrections, indicating that deal was struck between the Federal authorities and the State authorities in which said sentences would not be served concurrently, but consecutively.

36. On September 23, 1996, Plaintiff ARTHURS submitted an "Inmate's Request To Staff Member" (hereinafter referred to as "IRSM"), directed to Defendant KING, Institutional Parole Representative at SCI-Pittsburgh, inquiring about Plaintiff's back-time calculation and the approximate date when Plaintiff would be released to the Federal Authorities. See, Inmate's Request, attached hereto as Exhibit "M", and made a part hereof by this reference.

37. That on or about October 3rd 1996 Plaintiff ARTHURS received a response suggesting that Plaintiff ARTHURS write to the Federal sentencing judge and to the PaBPP Harrisburg Office. See, Response to Inmate Request, attached hereto as Exhibits "M" and "N", and made a part hereof by this reference.

38. On or about November 19, 1996, the PaBPP Harrisburg Office received Plaintiff's request for a computation of Plaintiff's sentence. See, correspondence from PaBPP Chief Counsel, attached hereto as Exhibit "O", and made a part hereof by this reference.

5

39. On or about July 15, 1998, nearly 1-½ years later, Attorney Roy, Counsel for Pennsylvania Department of Probation and Parole, via written correspondence, advised Plaintiff ARTHURS that the PaBPP could not "recompute [his] maximum expiration date of sentence until [he] become[s] available to the Board." See, Exhibit "O".

40. That on July 16, 1997, Plaintiff ARTHURS sent another IRSM to an officer of the Parole Department, inquiring about when Plaintiff's sentence would be completed.

41. That on October 10th 1997, Plaintiff ARTHURS received a response stating "Sorry to take so long to answer this request. I asked Mr. Dickey for an answer and have not received any as yet." See, Exhibit "P", attached hereto and made a part hereof by this reference.

42. That, further, throughout Plaintiff ARTHURS' incarceration, Plaintiff ARTHURS notified Defendant DICKEY of the sentence miscalculation and further, requested that Defendant DICKEY remedy the miscalculation.

43. That Defendant DICKEY, having been notified of the miscalculation, undertook no effectual measures in an attempt to remedy Plaintiff ARTHURS' sentence miscalculation, but ignored said requests.

44. That, further, upon information and belief, despite Defendant DICKEY being responsible for overseeing, and assuring, that inmates, incarcerated in the Pennsylvania Department of Corrections were provided a parole hearing, Defendant DICKEY undertook no effectual measures to provide Plaintiff ARTHURS with any parole hearing.

45. That in March 1998, after Plaintiff ARTHURS sent an inquiry to Westmoreland County Judge McCormick, the Westmoreland County Public Defender's Office confirmed that Plaintiff's Three (3) to Six (6) year sentence was to run concurrently with Plaintiff's Federal Sentence. See, Exhibit "Q", attached hereto and made a part hereof by this reference.

46. That Plaintiff ARTHURS, in an attempt to provide clarification to the Defendants, individually and/or collectively, inquired with Jay J. Finkelstein, Esquire, Federal Public Defender's Office.

47. That on June 11th 1998, Jay J. Finkelstein, Esquire informed Plaintiff ARTHURS that Finkelstein had checked with the Federal Bureau of Prisons, and he responded by letter stating that Plaintiff ARTHURS' "federal time has not yet begun to run." See, Exhibit "R", attached hereto and made a part hereof by this reference.

48. That, accordingly, the Commonwealth Defendants, having not properly credited Plaintiff ARTHURS with Plaintiffs credit for serving his back time, adversely, and detrimentally, affected and jeopardized the corrected calculation of Plaintiff ARTHURS' sentence.

49. That on October 30th 2000 Plaintiff ARTHURS sought relief from the Federal Sentencing Judge, Donetta Ambrose, by filing, Pro Se, a Motion to Dismiss Detainer with Prejudice. See, Federal Criminal Docketing Statement, attached hereto as Exhibit "S" and Motion to Dismiss Detainer attached hereto as Exhibit "T", and made a part hereof by this reference.

50. That, the United States, by and through, Assistant U.S. Attorney William C. Snyder, informed the Sentencing Judge, The Honorable Donetta Ambrose, that upon Plaintiff ARTHURS' July 20th 1995 sentencing before her Honor, the U.S. Marshals lodged the Court's Judgment and Sentence as a detainer, and that the Bureau of Prisons had not yet received custody of Plaintiff ARTHURS to begin his federal sentence.

51. That AUSA Snyder argued before Judge Ambrose that the lifting of the federal detainer was inappropriate because Plaintiff ARTHURS "has not finished his state sentence and/or 'backtime.'" See, Exhibit "D" at ¶2, attached hereto and made a part hereof by this reference.

52. That, upon information and belief, AUSA Snyder based his argument on certain representations made by officials from the Pennsylvania Department of Corrections and the Pennsylvania Board of Probation and Parole, as set forth more fully herein.

53. That before the Court, AUSA Snyder explained that on January 4th 2001 "Supervisory Deputy U.S. Marshal Cathy Jones contacted Pennsylvania officials to inquire whether petitioner (Plaintiff ARTHURS) was yet available to come into federal custody" and that [Cathy Jones] "was advised that the Pennsylvania officials were aware of the detainer, but they could not yet release petitioner because he continues to serve a state sentence. See, Government's Opposition To Defendant's Motion to Dismiss Detainer attached hereto as Exhibit "D" at ¶¶ 2 and 3, made a part hereof by this reference (emphasis added).

54. That, moreover, on January 10, 2001, agents of the United States Attorney's Office contacted SCI-Pittsburgh and were informed by Defendant HOUSE that upon review of Plaintiff ARTHURS' record Plaintiff was presently serving a state sentence and he was not being held on the federal detainer. See, Exhibit "D".

55. That, on January 2nd 2001, the U.S. Bureau of Prisons Administrator, Randal Dawkins, "advised that Petitioner was never brought into the federal system to serve his sentence, has never been designated to a federal facility, and has never begun to serve the sentence imposed by this Court (Judge Ambrose). See, Exhibit "D", at ¶4.

56. On January 2nd 2001, on the same day of AUSA Snyder's submission to the Court, and in response to AUSA Snyder's inquiries, the Bureau of Prisons designated, nunc pro tunc, the Department of Corrections as the facility for Plaintiff ARTHURS to serve his federal sentence.

57. That said designation allowed Plaintiff ARTHURS to receive credit for the time he had served on the state sentence, and therefore created the concurrent sentences, that was the design and intent of the sentencing courts.

58. That based upon this nunc pro tunc designation, the Federal Bureau of Prisons calculated that Plaintiff ARTHURS' sentence would have been completed on April 21, 2000, and effectively lifted the federal detainer.

59. That, moreover, the Bureau of Prisons informed the officials at SCI-Pittsburgh of the nunc pro tunc designation and the completion of Plaintiff ARTHURS' federal sentence. See, BOP Notification attached hereto as Exhibit "U", and March 29th 2001 letter from BOP to SCI-Pittsburgh attached hereto as Exhibit "V", March 29th 2001 letter from BOP to U.S. Marshal's attached hereto as Exhibit "W", April 3rd 2001 Letter from U.S. Probation Office to Defendant HALE, SCI-Pittsburgh attached hereto as Exhibit "X", and made a part hereof by this reference.

60. That on June 27, 2001, the Pennsylvania Board of Probation and Parole mailed to Plaintiff ARTHURS a Notice of Re-commitment, indicating that Plaintiff ARTHURS' parole violation maximum date was February 21, 2003. See, PaBPP "Green sheet" attached hereto as Exhibit "Y", and made a part hereof by this reference.

61. That, the Pennsylvania Board of Probation and Parole refused to consider the

calculation of the BOP, and determined that Plaintiff ARTHURS only served his federal sentence, and did not serve his state sentence, despite the directives and/or recommendations set forth by all sentencing judges.

62. That on July 26, 2001, Plaintiff ARTHURS appealed the decision of the Pennsylvania Board of Probation and Parole's Notice (Exhibit "Y"), insofar as disputing the computation of Plaintiff ARTHURS' sentence by commencing his backtime on April 10, 2000, the date the federal sentence expired. Said Appeal is attached hereto as Exhibit "Z", and made a part hereof by this reference.

63. That on September 21, 2001, the PaBPP's Chief Counsel dismissed Plaintiff ARTHURS' administrative appeal as untimely. See, Letter dated September 21, 2001 attached hereto as Exhibit "AA", and made a part hereof by this reference.

64. On July 24, 2002, Plaintiff ARTHURS filed a Habeas Corpus action in the United States District Court, Western District of Pennsylvania at Docket No.: 02-cv-01296.

65. On February 26, 2003, Plaintiff ARTHURS' petition was denied in that the Court ruled that Plaintiff ARTHURS did not fully exhaust his state court remedies.

66. During the pendency of Plaintiff ARTHURS' Habeas Corpus action, Plaintiff ARTHURS sent another IRSM to Defendant HALE, Records Supervisor, SCI-Pittsburgh.

67. That on January 29th 2003, Defendant HALE responded to Plaintiff ARTHURS and included a calculation of Plaintiff ARTHURS' back time commencing on the date when Plaintiff ARTHURS completed his federal sentence. See, Exhibit "BB" attached hereto, and made a part hereof by this reference.

68. That Defendant HALE incorrectly stated that Plaintiff ARTHURS was arrested on his state charge "after [he was] arrested by the Feds." See, Exhibit "BB", attached hereto.

69. That based upon Defendant HALE's incorrect representations and miscalculation, Plaintiff ARTHURS was not be entitled to credit on his state sentences.

70. That Plaintiff ARTHURS submitted subsequent IRSMs to Defendant HALE, and Defendant HALE, on March 18, 2003, continued to respond that "your sentence is calculated correctly", and accordingly, Defendant HALE took no other reasonable action to investigate Plaintiff ARTHURS' sentence calculation. See, Exhibit "CC", attached hereto, and made a part hereof by this reference.

71. That on March 31, 2003, Defendant HALE, incorrectly, and with reckless disregard for the veracity of said statements, responded to Plaintiff ARTHURS' inmate request by stating to Plaintiff ARTHURS that "Your federal sent. (sentence) cannot run cc (concurrent) since you were a parole violator" and that "The Parole Act designates the order in which your sentences are to run (even though the feds said it should be concurrent)." See, Exhibit "DD", Attached hereto, and made a part hereof by this reference.

72. That upon Defendant HALE refusing to correct Plaintiff ARTHURS' sentence, on March 18, 2003, Plaintiff ARTHURS filed a *Pro Se* Habeas Corpus Petition in the Court of Common Pleas of Allegheny County before the sentencing Judge, the Honorable Walter Little. *See*, Writ of Habeas Corpus attached hereto as Exhibit "EE", and made a part hereof by this reference.

73. That on June 5th 2003, the Honorable Walter Little denied Plaintiff ARTHURS' Writ of Habeas Corpus noting that the issue of sentence calculation should

be addressed by the Pennsylvania Department of Corrections and the Pennsylvania Board of Probation and Parole. Judge Little's Opinion, attached hereto as Exhibit "FF", and made a part hereof by this reference.

74. That contemporaneously with the Writ of Habeas Corpus filed in the Court of Common Pleas of Allegheny County, Plaintiff ARTHURS filed a *Pro Se* Writ of Habeas Corpus with Westmoreland County Sentencing Judge Richard E. McCormick, Jr.

75. That on April 8th 2003, Judge McCormick, Westmoreland County, denied Plaintiff ARTHURS' Writ of Habeas Corpus stating that the "State Parole Board has exclusive authority over decisions relating to Prisoner's parole...and therefore, this Court has no authority to entertain the Petitioner's request for habeas corpus relief". *See*, Judge McCormick's Order of Court attached hereto as Exhibit "GG", and made a part hereof by this reference.

76. That on March 13, 2003, Plaintiff ARTHURS again served upon Defendant HALE another IRSM again requesting redress regarding the calculation of his sentence, but Defendant HALE, again, set forth that "… even though the judges agreed these sentences should run concurrent, the (sic) cannot due to the parole act." See, Exhibit "HH", attached hereto, and made a part hereof by this reference.

77. That on March 30th 2003, Plaintiff ARTHURS served upon Defendant HALE a further IRSM explaining to the Records Supervisor exactly how the sentences were to have been calculated.

78. That on March 31st 2003, Defendant HALE, having made no further inquiry, or taking any effectual action, and ignoring Plaintiff ARTHURS' grievances, simply echoed the previous explanation as to her interpretation of the sentences. See, Exhibit "II" attached hereto, and made a part hereof by this reference.

79. That on April 12, 2003, Plaintiff ARTHURS filed a Petition For Writ of Mandamus action before the Pennsylvania Commonwealth Court at Docket No. 242 MD 2003. See, Exhibit "JJ" attached hereto, and made a part hereof by this reference.

80. That, additionally, on March 10th 2005, Plaintiff ARTHURS served upon the Defendants additional IRSMs without any response. See, "KK" attached hereto, and made a part hereof by this reference.

81. On May 6th 2005, having received no response to Plaintiff ARTHURS' previously filed IRSM (Exhibit "LL"), Plaintiff ARTHURS filed an IRSM to Defendant WILSON, Superintendent of SCI-Pittsburgh seeking relief. *See*, IRSM dated May 6th 2005 attached hereto as Exhibit "KK", and made a part hereof by this reference.

82. That on May 13th 2005 Plaintiff ARTHURS received a response from Deb Mahlmeister indicating that Plaintiff's IRSM was forwarded to another individual. See, Exhibit "MM".

83. That on June 7th 2005, Plaintiff ARTHURS filed a grievance addressed to the grievance coordinator, Defendant TRAVIS-JAMISON. *See*, IRSM #11984 dated June 7th 2005 attached hereto as Exhibit "NN", and made a part hereof by this reference.

84. That on June 28th 2005, Plaintiff ARTHURS filed an appeal of IRSM #11948 with Defendant WILSON for failure to respond to said grievances, and/or adequately remedy and redress the sentencing issues. See Exhibit "OO", and made a part hereof by this reference.

85. That on July 11th 2005, Plaintiff ARTHURS, with respect to the June 28, 2005

appeal, filed an appeal of the same grievance to Grievance and Appeals in the central office. *See*, Appeal attached hereto as Exhibit "PP", and made a part hereof by this reference.

86. That, Plaintiff ARTHURS, throughout Plaintiff ARTHURS' incarceration in the Pennsylvania Department of Corrections at the State Institution at Fayette, Plaintiff ARTHURS made repeated written and oral requests to Defendant SCHAUP and Defendant JAMISON.

87. That Plaintiff ARTHURS notified Defendant SCHAUP and Defendant JAMISON of said sentence miscalculation and further, requested that Defendant SCHAUP and Defendant JAMISON remedy the miscalculation.

88. That despite Defendant SCHUAP and Defendant JAMISON, having been notified of the miscalculation, the Defendants, individually and/or collectively, undertook no effectual measures in an attempt to remedy Plaintiff ARTHURS' sentence miscalculation, but ignored said requests.

89. Plaintiff ARTHURS, despite placing the Defendants, individually and/or collectively, on notice of the injurious nature of his sentencing calculation, and upon the filing of numerous written grievances, continued to be detained illegally by both the Department of Corrections and the Pennsylvania Board of Probation and Parole.

## PROCEDURAL HISTORY OF MANDAMUS ACTION FILED IN THE COMMONWEALTH COURT

90. That, as aforementioned, on April 12, 2003, Plaintiff ARTHURS filed, *Pro Se*, a Petition For Writ of Mandamus with the Pennsylvania Commonwealth Court.

91. That on June 9th 2003, Plaintiff ARTHURS filed a *Pro Se* Application for Summary Relief with the Pennsylvania Commonwealth Court.

92. That on July 17th 2003, the Pennsylvania Department of Corrections filed Preliminary Objections and a response to Plaintiff ARTHURS Motion for Summary Relief.

93. That on December 18th 2003, the Commonwealth Court overruled the Pennsylvania Department of Corrections Preliminary Objections and denied Plaintiff ARTHURS' Motion for Summary Judgment.

94. That on January 20th 2004, the Pennsylvania Department of Corrections filed its Answer to Plaintiff's Motion, and on February 12th 2004, Plaintiff ARTHURS subsequently filed a Motion For Summary Relief.

95. That upon the submission of briefs, the Commonwealth Court, ultimately, on March 7th 2005, dismissed Plaintiff ARTHURS' Motion For Writ of Mandamus.

96. That on April 6th 2005, Plaintiff ARTHURS filed a *Pro Se* Appeal to the Pennsylvania Supreme Court.

97. That on November 29th 2005, the Pennsylvania Supreme Court reversed the Commonwealth Court's dismissal and remanded the action for further proceedings.

98. That on December 21, 2006, the Commonwealth Court directed all parties to file new briefs to address specific issues, including the exhaustion of administrative remedies.

99. That, upon information and belief, in early 2007, the Pennsylvania Institutional Law Project, by and through Attorney Su Ming Yeh, entered its appearance on behalf of Plaintiff ARTHURS.

100. That the matter before the Commonwealth Court was scheduled for argument

before the Court on March 12th 2007.
   101. That on the eve of argument before the Commonwealth Court, the Pennsylvania Department of Corrections and the Pennsylvania Board of Probation and Parole, through counsel, finally corrected the dates of Plaintiff's confinement and determined that the Plaintiff should have been paroled from the Pennsylvania Board of Probation and Parole on December11th 2003.

Dkt. [1], at ¶¶16 - 101. The complaint alleges that the foregoing violated Plaintiff's federal constitutional rights.

The first defense raised by the Defendants in their motion to dismiss is that the complaint fails to sufficiently allege the personal involvement of the following eight defendants: Secretary Beard, Superintendent of SCI-Pittsburgh Wilson, Assistant Superintendent of SCI-Pittsburgh Stickman, Records Specialist of SCI-Pittsburgh House, Records Specialist of SCI-Pittsburgh Schaup, Deputy Superintendent of SCI-Fayette Travis-Jamison, Parole Board Chairwoman McVey, and Parole Supervisor Fedenis.

In order to be liable under Section 1983, a defendant must have personal involvement in the alleged violation of a plaintiff's federal rights, liability premised upon respondeat superior is not sufficient. See, e.g., Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1981) (requiring personal involvement for liability to attach under Section 1983 cases). "Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way." McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979). Hence, the only way a defendant can be liable under Section 1983 is based upon facts showing that the defendant was personally involved in depriving the civil rights of the plaintiff, i.e., personally engaged in wrongdoing.

However, contrary to Defendants' contentions, a reading of the operative complaint makes clear that Plaintiff is not seeking to hold the eight aforementioned Defendants liable based

merely on their relationship to underlings who engaged in wrongdoing. Rather, Plaintiff seeks to hold those eight Defendants liable for their own alleged wrongdoing, to wit, that they either personally knew of Plaintiff's sentences being wrongly credited and did nothing, i.e., acquiesced in the wrongdoing, or they promulgated policies that proximately caused the constitutional violation. This is sufficient at this stage of the case. See, e.g., Rode v. Dellarciprete, 845 F.2d at 1207 ("A[n] [individual government] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or **of actual knowledge and acquiescence**.") (citations omitted)(emphasis added); Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003)(promulgation

of policies which cause constitutional violations can serve as a basis for Section 1983 liability).[1] Accordingly, this argument does not merit entitlement to dismissal of the complaint.

The Defendants next concede that imprisonment beyond one's term constitutes punishment with the intendment of the Eighth Amendment and could violate the Eighth Amendment. Dkt. [10] at 9. However, the Defendants contend that in order to succeed on such an Eighth Amendment claim, the Plaintiff must allege deliberate indifference on the part of the defendants. Defendants state that to "establish deliberate indifference, a plaintiff has to show that a defendant knew or should have known of a condition and was either recklessly or intentionally indifferent to that knowledge." Dkt. [10] at 10 (citing Herman v. Clearfield County,

---

[1] Defendants argue that "supervisory official's misconduct cannot be merely a failure to act" citing Com. of Pa. v. Porter, 659 F.2d 306, 336 (3d Cir. 1981). Dkt. [10] at 7. It is true that the Court stated in Porter that supervisory "**officials' misconduct cannot be merely a failure to act**. Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." (emphasis added). However, the emphasized words are dictum taken out of context by the Defendants. The whole sense of the passage, in context, is that in order for a supervisor to be liable, a plaintiff must establish a causal link between the supervisor's "sins" (be they sins of omission or commission) and the constitutional injury. It would be helpful to have such dictum explicitly clarified. However, the Court of Appeals more recently noted in Natale v. Camden County, 318 F.3d at 584, that a supervisory policy maker and/or governmental employer may be liable "where 'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " (some internal quotation marks omitted). See also Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997) ("[o]ur cases have held that 'actual knowledge and acquiescence' suffices for supervisory liability because it can be equated with 'personal direction' and 'direct discrimination by the supervisor.'"), abrogated on other grounds by, Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Black v. Stephens, 662 F.2d 181, 189 (3d Cir. 1981)(noting that "mere acquiescence by police chief when he is on notice of constitutional violations [by his subordinates] is sufficient to trigger liability under section 1983")(citing, Maclin v. Paulson, 627 F.2d 83, 86 (7th Cir. 1980); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Hence, contrary to Defendants' contention, failure to act on the part of a supervisory official, where the supervisor has knowledge of the violation amounts to acquiescence and can form the basis for liability because of the supervisor's own wrongdoing, i.e., failing to correct or prevent constitutional wrongs. The complaint can be read to sufficiently allege such a scenario. Thus, on this basis, the Defendants have failed to carry their burden to show entitlement to dismissal of the complaint against these eight Defendants.

Pa., 836 F.Supp. 1178, 1184 (W.D. Pa. 1993)). The court finds that the complaint sufficiently alleges that all of the defendants knew or should have known that Plaintiff was being held beyond his term of confinement or, as to the higher up supervisory defendants, the complaint adequately alleges that they knew or should have known that their policies in place created an unacceptably high risk that prisoners may continue to be confined beyond their term of incarceration. This is sufficient at this stage. Hence, this argument does not merit dismissal of the complaint.

Last, the Defendants argue that negligence does not give rise to a legally cognizable claim under Section 1983. While Defendants correctly state the rule of law,[2] they fail to establish that the complaint alleges liability merely on the basis of negligence (which does not form a basis for liability) as opposed to liability based upon deliberate indifference (which does form a basis for liability). Hence, this ground does not merit dismissal of the complaint.

Accordingly, the motion to dismiss should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections by May 9, 2008 in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 22 April, 2008

---

[2] Daniels v. Williams, 474 U.S. 327, 328 (1986).

cc: The Honorable Joy Flowers Conti
United States District Judge

All Counsel of Record by Notice of Electronic Filing