IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY THOMAS ARTHURS,<br>　　　　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>JEFFREY A. BEARD, Secretary,<br>Commonwealth of Pennsylvania<br>Department of Corrections, in his<br>individual capacity; SUPERINTENDENT<br>WILSON, Superintendent of SCI-Pittsburgh,<br>in his individual capacity; WILLIAM<br>STICKMAN, Superintendent,<br>SCI-Pittsburgh, in his individual capacity;<br>THOMAS BENDER, Records Supervisor,<br>SCI-Pittsburgh, in his individual capacity;<br>ROCHELLE Y. KING, Records Supervisor,<br>SCI-Pittsburgh, Pennsylvania Department<br>of Corrections, in her individual capacity;<br>RHONDA HOUSE, Records Specialist,<br>Pennsylvania Department of Corrections,<br>SCI-Pittsburgh, in her individual capacity;<br>VALERIE HALE, Records Supervisor,<br>SCI-Pittsburgh, in her individual capacity;<br>JUSTIN TIMOTHY SCHAUP, Records<br>Specialist, SCI-Fayette, Pennsylvania<br>Department of Corrections, in his individual<br>capacity; SARAH A. TRAVIS-JAMISON,<br>Deputy Superintendent, SCI-Fayette,<br>Pennsylvania Department of Corrections,<br>in her individual capacity; CATHERINE C.<br>McVEY, Chairman of the Pennsylvania<br>Board of Probation and Parole, in her<br>individual capacity; DANIEL FEDENIS,<br>Parole Supervisor, Pennsylvania Board of<br>Probation and Parole, in his individual<br>capacity; THOMAS DICKEY, Parole<br>Supervisor at SCI-Pittsburgh, Pennsylvania<br>Board of Probation and Parole, in his<br>individual capacity,<br>　　　　　　　　　　Defendants. | Civil Action No. 07-862<br>Judge Joy Flowers Conti/<br>Magistrate Judge Amy Reynolds Hay<br><br>Re Dkt. [22] |

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

Jeffrey Thomas Arthurs ("plaintiff"), a former prisoner, has filed a civil rights action pursuant to 42 U.S.C § 1983, alleging that defendants, all of whom are employed either by the Pennsylvania Department of Corrections ("DOC") or by the Pennsylvania Board of Probation and Parole ("the Board"), violated his Eighth and Fourteenth Amendment rights by keeping him incarcerated beyond his court imposed sentences. Defendants do not dispute that plaintiff was, in fact, incarcerated for over three years after his maximum term had expired, but have filed a motion for judgment on the pleadings [Dkt. 22], in which they argue that plaintiff's sentence was ultimately recalculated as the result of a change in the law and, consequently, they are entitled to qualified immunity. For the reasons that follow, it is respectfully recommended that the motion be granted.

II.  REPORT

A.   Factual and Procedural Background

Plaintiff was sentenced on September 27, 1990, to a period of incarceration of eighteen months to five years following a state conviction for robbery. Plaintiff was paroled on October 9, 1991, after serving the minimum sentence, but was recommitted on April 4, 1994, having been found guilty of a technical violation. Eight months later, on December 4, 1994, plaintiff was again paroled but rearrested on January 29, 1995, and charged with aggravated assault on a police officer in Allegheny County. On February 8, 1995, while plaintiff was incarcerated at the Allegheny County Jail ("ACJ"), robbery charges were brought against him by Westmoreland County, and on February 15, 1995, federal charges were brought against him for bank robbery.

On July 20, 1995, plaintiff pled guilty to the latter charge first and was sentenced to 72 months (6 years) by federal court Judge Donetta W. Ambrose (currently Chief Judge). Judge Ambrose ordered that plaintiff be committed to the custody of the United States Bureau of Prisons and recommended that plaintiff serve his federal sentence at the Federal Correctional Institution at McKean. See Complaint, Exh. E, p. 2. Thereafter, on August 7, 1995, plaintiff plead guilty to the robbery charges brought in Westmoreland County and was sentenced to a period of incarceration of three to six years which the court expressly ordered to be served concurrent to the federal sentence as part of the plea agreement. On November 13, 1995, plaintiff also plead guilty to the charge of aggravated assault brought in Allegheny County and was similarly sentenced to three to six years. That sentences was also ordered to run concurrent to the federal sentence as well as that imposed in Westmoreland County.

As a result of these convictions, the Board revoked the parole plaintiff was serving on the original 1990 robbery conviction and recommitted plaintiff in December of 1995 to serve the "back time" or the unexpired portion of that sentence. At the time, the Board calculated that plaintiff had forty months remaining in back time which plaintiff was to begin serving "when available." Complaint ¶ 26, Exhs. J, K. It should be noted here, however, that plaintiff was never transferred to a federal facility to serve his federal sentence as recommended by Judge Ambrose but was physically being held in a state correctional facility under the control of the DOC.

On January 10, 2001, however, the Bureau of Prisons ("BOP") notified the U.S. Marshals Service that it was retroactively designating the State Correctional Institution at Pittsburgh as being the facility in which plaintiff was to serve his federal sentence and, on March 29, 2001, issued a letter to the DOC and the U.S. Marshals Service notifying them, *nunc pro*

3

*tunc*, that plaintiff was deemed to have completed his federal sentence on April 21, 2000. Complaint ¶ 29, Exhs. U, V. W. Accordingly, on June 27, 2001, the Board recalculated plaintiff's sentences and determined not only that his back time on his original 1990 sentence was actually 34 months and not 40, but that plaintiff had begun to serve back time at the expiration of his federal sentence on April 21, 2000. As such, the Board determined that plaintiff's back time would be completed as of February 21, 2003. Complaint ¶¶ 30, 31, Exh. L. Further, because Section 21.1(a) of the Parole Act, 61 P.S. § 331.21a(a), requires that a state parole violator serve his or her back time before serving any new state sentence, defendants declined to credit any of the time plaintiff spent serving his federal sentence toward his new state sentences. Thus, according to the DOC's calculations, plaintiff's new state sentences would not expire until May of 2007.

In an effort to remedy what he perceived to be a miscalculation of his sentence and citing to the fact that the state courts had ordered his new state sentences to run concurrent to his federal sentence, plaintiff brought a mandamus action in the Commonwealth Court of Pennsylvania on April 12, 2003. Complaint ¶ 79, Exh. JJ. The DOC filed preliminary objections which were denied by the Court in December of 2003, finding that the case was "anything but clear at this stage of the proceedings." Def. Exh. C, p. 26. Nevertheless, on March 7, 2005, the Commonwealth Court dismissed plaintiff's mandamus action pursuant to preliminary objections filed by the Board, finding that plaintiff had failed to exhaust the prison's administrative grievance process. Def. Exh. A. Plaintiff appealed that decision to the Pennsylvania Supreme Court which reversed and remanded the matter to the Commonwealth Court on November 29, 2005, for further consideration in light of McCray v. Pennsylvania Department of Corrections, 872 A.2d 1127, 1131 (Pa. 2005), which held that an inmate may directly challenge an improperly

4

calculated sentence by an action in the original jurisdiction of the Commonwealth Court of Pennsylvania. Complaint ¶ 97.

The DOC nevertheless recalculated plaintiff's sentence on February 22, 2007, and determined that plaintiff's sentence actually expired on December 11, 2003. Defendants contend that the recalculation was initiated after Griffin v. Pennsylvania Department of Corrections, 862 A.2d 152 (Pa. Cmwlth. 2004), was affirmed by the Pennsylvania Supreme Court on February 20, 2007, see Griffin v. Pennsylvania Department of Corrections, 915 A.2d 237 (2007), forcing the DOC to concede that plaintiff's state sentences had, in fact, run concurrent to his federal sentence and that he had completed serving his time in December of 2003.[1] Plaintiff, who had apparently been paroled to a drug treatment facility in March of 2006, was ultimately discharged from custody on February 23, 2007. His action in mandamus was subsequently dismissed as moot in a Memorandum Order dated March 27, 2007. Complaint, Exh. E.

Plaintiff filed the instant complaint on June 21, 2007, bringing claims under 42 U.S.C. § 1983 for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

B.   Standard of Review

Motions for judgment on the pleadings are treated in the same manner as motions to dismiss and require the court to "view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to plaintiff." Mele v. Federal Reserve Bank

---

[1]Thus, it was ultimately determined that plaintiff served his federal sentence of 72 months and new state sentences of 36 to 72 months concurrently, followed by 34 months back time, for a total of 106 months or 8 years and 10 months. Although plaintiff was not sentenced on the parole violations until July 20, 1995, which would appear to make the expiration date of his sentences in May of 2004, he was also given credit for the six months or so he was incarcerated on his parole violations before he was actually sentenced rendering his expiration date in December of 2003.

5

of New York, 359 F.3d 251, 253 (3d Cir. 2004), quoting Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir. 2002). "[T]he motion should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" Id.

    C.    Discussion

Defendants argue that they are entitled to qualified immunity because, under the circumstances of this case, it did not become clear that plaintiff was to receive credit toward his new state sentence for the time spent serving his federal sentence until the Pennsylvania Supreme Court affirmed the Commonwealth Court's order granting mandamus relief in Griffin v. Pa. Department of Corrections, 862 A.2d 152 (Pa. Cmwlth. 2004), aff'd, 915 A.2d 639 (Pa. 2007) ("Griffin").

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, ___ U.S. ___, ___, 129 S. Ct. 808, 815 (2009), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As the Supreme Court has explained:

> What this means in practice is that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 ... (1987).
>
>     \*    \*    \*
>
> "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has

6

> previously been held unlawful, but it is to say that in the light of
> pre-existing law the unlawfulness must be apparent." Id., at 640 ...
> (citations omitted).

Wilson v. Lane, 526 U.S. 603, 614-15 (1999).

Thus, the question in this case is whether the state of the law was sufficiently clear that a reasonable official would understand that calculating plaintiff's sentence as the officials in this case did -- declining to give plaintiff credit toward his new state sentence for the time he served on his federal sentence -- violated that law or whether the unlawfulness of defendants' action was apparent prior to Griffin being decided by the Pennsylvania Supreme Court.[2] Defendants contend that the law in this regard was not clearly established until Griffin was decided because, until that time, a conflict existed between the Sentencing Code, 42 Pa. C.S.A. § 9761, and the Parole Act, 61 P.S. § 331.21a.

Indeed, Section 9761 of the Sentencing Code provides:

> (b) SENTENCES IMPOSED BY OTHER SOVEREIGNS.- If the
> defendant is at the time of sentencing subject to imprisonment

---

[2]Until January of this year, assessing whether a government official was entitled to qualified immunity required a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201-02 (2001). First, the courts had to determine whether the facts established that the official's conduct violated a constitutional right. If the court found that a constitutional violation occurred then, and only then, the court was to proceed to the second step of the analysis and ask whether the right was clearly established at the time of the violation. Id. at 202. See Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007). The Supreme Court, however, modified the two-step analysis in January of 2009, holding that it was no longer mandatory to proceed in sequence but was within the courts' discretion to decide which of the two prongs should be addressed first. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). In this case, not only do defendants appear to concede that keeping plaintiff incarcerated beyond his maximum sentence violated his constitutional rights, having addressed only the second prong of the analysis in their brief and having relied on McSpadden v. Wolfe, 2008 WL 910010, at **11-14 (E.D. Pa. April 2, 2008), aff'd, 2009 WL 1059552 (3d Cir. April 21, 2009), in which similar claims were found violative of the Eighth and Fourteenth Amendments, but the constitutional debate here appears to rest on the court's interpretation of state law. Because resolving a potential ambiguity in state law does not promote the underlying principle enunciated in Saucier, of encouraging federal courts to "elaborate the constitutional right with greater degrees of specificity," Saucier, 533 U.S. at 207, the court has not addressed what is typically the first prong of the qualified immunity analysis. See Pearson, 129 S. Ct. at 819; Egolf v. Witmer, 526 F.3d 104, 109-110 (3d Cir. 2008).

7

> under the authority of any other sovereign, the court may indicate
> that imprisonment under such other authority shall satisfy or be
> credited against both the minimum and maximum time imposed
> under the court's sentence. If the defendant is released by such
> other authority before the expiration of the minimum time imposed
> by the court, he shall be returned to a correctional institution of the
> Commonwealth to serve the time which remains of the sentence. If
> the defendant is released after the minimum time has elapsed, he
> shall be considered for parole on the same basis as a prisoner who
> has served his minimum time in a correctional institution of the
> Commonwealth. If the defendant is released after the maximum
> time imposed under the sentence of imprisonment he shall be
> deemed to have served his sentence.

42 Pa.C.S. § 9761(b). Because plaintiff had already been sentenced on the federal charges when the new state sentences were imposed and the state courts ordered that those sentences run concurrent to his federal sentence, Section 9761(b) dictates that the time plaintiff spent serving the federal sentence should also have been credited toward his new state sentences.

> Section 21.1(a) of the Parole Act, however, provides that:
>
> Any parolee under the jurisdiction of the Pennsylvania Board of
> Parole released from any penal institution of the Commonwealth
> who, during the period of parole or while delinquent on parole,
> commits any crime punishable by imprisonment, for which he is
> convicted or found guilty by a judge or jury or to which he pleads
> guilty or nolo contendere at any time thereafter in a court of record,
> may, at the discretion of the board, be recommitted as a parole
> violator. If his recommitment is so ordered, he shall be reentered
> to serve the remainder of the term which said parolee would have
> been compelled to serve had he not been paroled, and he shall be
> given no credit for the time at liberty on parole.
>
> If a new sentence is imposed upon such parolee, the service of the
> balance of said term originally imposed shall precede the
> commencement of the new term imposed in the following cases:
>
> (1) If a person is paroled from any State penal or correctional
> institution under the control and supervision of the Department of
> Justice and the new sentence imposed upon him is to be served in
> any such State penal or correctional institution.

> (2) If a person is paroled from a county penal or correctional institution and the new sentence imposed upon him is to be served in the same county penal or correctional institution.
>
> In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

61 P.S. § 331.21a(a). Thus, under this provision, any back time owed on the original sentence is to be served before the commencement of a new sentence if the parolee was paroled from the same penal institution where the new sentence is to be served. Because plaintiff was paroled from a state penal institution and was to serve his back time in a state correctional institution, it follows that he was required to serve his back time before the new state sentences. Allowing plaintiff's new state sentence to run concurrent to his federal sentence, however, would necessarily permit plaintiff to serve his new state sentences before his back time, in contravention to Section 21.1(a) of the Parole Act. Consequently, defendants declined to credit plaintiff with the time served on his federal sentences toward his new state sentence.[3]

Under these circumstances, it does not appear that defendants' determination that plaintiff could not begin to serve his new state sentence until he served his back time was objectively unreasonable. Although it cannot be disputed that the Sentencing Code gives the state courts the authority to run any sentence imposed concurrent to a federal sentence, given the plain language of the Parole Act, it cannot be said that the unlawfulness of defendants' action was apparent or that the law was sufficiently clear that a reasonable official would understand

---

[3]Thus, according to defendants' original calculations, plaintiff was required to serve his federal sentence of 72 months first, followed by his 34 months of back time due on his original state sentence, and then serve the new state sentences of 36 months, for a total of 142 months beginning on July 20, 1995, when he was sentenced in federal court. The result, however, was that plaintiff served the new state sentences consecutive to his federal sentence, contrary to the state courts' orders that they be served concurrently.

that calculating plaintiff's sentence as they did violated that law. Indeed, plaintiff himself has recognized that § 21.1(a) of the Parole Act "somewhat casts a cloud upon the Sentencing Code." Pl. Brief, p. 11.

As previously discussed, however, the conflict was subsequently addressed by the Commonwealth Court in Griffin, under facts almost indistinguishable from the instant case.[4] Finding that the state court had the authority under the Sentencing Code to credit the time Griffin spent in federal prison toward his new state sentence, the court rejected the DOC's argument that Griffin's new state sentence could not be served concurrent to his federal sentence because he had to serve his back time on the original sentence before he could begin to serve his state sentence. The Court reconciled Section 21.1(a) of the Parole Act with its findings by clarifying that Griffin was not actually "serving" his new state sentence before serving his back time but, rather, was "reducing" his new state sentence while serving his federal time by virtue of the power granted to the state sentencing court under § 9761(b) of the Sentencing Code. Id., 862 A.2d at 158.

Although the Commonwealth Court issued its Opinion in Griffin on November 22, 2004, the DOC, believing that it had been wrongly decided, exercised its right to appeal to the Pennsylvania Supreme Court, which did not issue its order affirming the Commonwealth Court until February 20, 2007. Griffin, 915 A.2d 237 (2007). It therefore appears that the rules

---

[4]The only difference between Griffin and the instant case is that Griffin had an additional set of new state charges which preceded the new federal and state charges at issue. Although this created an issue as to whether the federal court had the authority to run its sentence concurrent to the first new state sentence, the court's finding that it did not have the authority, coupled with its finding that Griffin could not start serving either of his new state sentences until he was released from federal custody and had served his back time, placed Griffin in the same posture as this case, i.e., requiring the court to address what effect the state court's order that Griffin's state sentences run concurrent to each other and to the federal sentence had in light of the § 21a(a) of the Parole Act. Id. at 155-56.

10

regarding sentence calculations did not become clearly established until that time at which point the DOC promptly recalculated plaintiff's sentence and released plaintiff from custody on February 22, 2007 -- two days later.

Plaintiff nevertheless argues that, contrary to defendants' assertion, the law regarding the proper calculation of sentences where both § 9761 of the Sentencing Code and § 21.1(a) of the Parole Act are implicated was clearly established prior to Griffin. Specifically, plaintiff contends that the ambiguity between the two statutes was settled by the Pennsylvania Commonwealth Court's decision in Parish v. Horn, 768 A.2d 1214 (Pa. Cmwlth. 2001), aff'd, 569 Pa. 45, 800 A.2d 294 (2002) ("Parish").

In Parish, the petitioner, while on parole from a state sentence, was sentenced on new county charges and, three months later, on new state charges. The court ordered that the petitioner's new state sentence was to run concurrent to any sentence he was serving. The DOC, however, required the petitioner to serve his back time after his county time and then begin serving his new state sentence in total, arguing that giving Parish credit on his state sentence for the time he spent serving his county sentence would, in essence, allow him to serve a portion of his state sentence before serving his back time which was contrary to Section 21.1(a) of the Parole Act.

The court likened the case to one where a parolee remains incarcerated prior to trial because he is unable to meet the bail requirements and is then entitled to have the time spent in custody credited to his new sentence. Id. at 1216. Citing to the absence of authority which would prevent the court from applying that rule to Parish's situation, and finding that in both instances "there is a valid legal basis *other than the new state sentence* for the parolee's confinement, viz, failure to meet bail requirements and a previously imposed sentence," the court

11

concluded that Parish was not serving his new sentence before his back time but, rather, his new state sentence was, by court order, being reduced while he was serving his county sentence. Id.

Although Parish appears to resolve the tension between the Parole Act and the Sentencing Code, its holding and continued viability has nevertheless been drawn into question by the very court that decided it. In Detar v. Beard, 898 A.2d 26 (Pa. Cmwlth. 2006), the petitioner was required, "by operation of Section 21.1(a) of the ... Parole Act," to serve a new county sentence first, then the back time from his original sentence, and then the new state sentence. Id. at 28. When the DOC failed to give the petitioner credit for the time he served on his county sentence toward his new state sentence, he filed a petition for writ of mandamus in the Commonwealth Court arguing that, under Parish, the DOC incorrectly calculated his sentence. The DOC filed preliminary objections arguing, inter alia, that Parish was wrongly decided and inviting the court to revisit the issue. Although the court declined to overrule Parish, it nevertheless denied the petition for review based, in part, on its finding that, "in light of the express language of Section 21.1(a) of the Parole Act, and the failure to address certain other cases, the continued vitality of *Parish* is questionable." Id. at 30 (footnotes omitted). The court went on to note that the Parish Court not only "allowed credit on a new state sentence to accrue before service of backtime on an original state sentence, *despite the contrary provision in Section 21.1(a) of the Parole Act*," but that the Court failed to address a number of relevant cases that prohibited transfer of such credit to sentences in other courts. Id. at 30 n.5 (emphasis added). Thus, the Commonwealth Court expressly questioned the soundness of the Parish decision suggesting that it runs afoul of the plain language of the Parole Act, which is precisely the position that defendants took in this case.

Moreover, the Commonwealth Court implicitly declined to recognize Parish, in this case when, after the Pennsylvania Supreme Court affirmed Griffin and the DOC recalculated plaintiff's sentence accordingly, it dismissed plaintiff's petition for review as moot describing Griffin as "an intervening change in the law." See Def. Exh. E, p. 4.[5] Under these circumstances, where the Commonwealth Court has both expressly and implicitly called into question the reasoning and stability of its own holding in Parish, it is difficult to conclude that the holding clearly resolved the conflict between the Parole Act and the Sentencing Code or that plaintiff's right to credit against his new state sentence was sufficiently clear that a reasonable official would understand that denying him that credit violated that right.

Finally, it is undisputed that "[q]ualified immunity 'permits officers to make reasonable mistakes about what is lawful.'" DeLauri v. New Jersey Division of State Police, 2009 WL 222983, at * 6 (D.N.J. Jan. 27, 2009), quoting Jones v. City of Jersey City, 45 Fed. Appx. 196, 197 (3d Cir. 2002). See Pearson v. Callahan, 129 S. Ct. at 815 ("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact'") (internal citation omitted).

Here, there is nothing in the Complaint or the documents attached thereto which would suggest that defendants were acting in any way other than in accordance with what they believed to be law. They have consistently maintained, in both plaintiff's case and others like plaintiff's, that the Parole Act required him to serve his new state sentences after his back time.

---

[5] The court notes that the Honorable Walter R. Little, of the Court of Common Pleas of Allegheny County, also issued an Opinion in June of 2003, in which he denied plaintiff's Application for Writ of Habeas Corpus, finding that under Section 331.21 of the Parole Act, plaintiff's sentence had been calculated correctly. Complaint ¶¶ 72, 73, Exhs. EE, FF.

13

Given the plain language of the Parole Act, their mistake in this regard does not appear to have been an unreasonable one and therefore should not serve to strip them of qualified immunity. See McSpadden v. Wolfe, 2008 WL 910010, at *15. In so finding, the court fully recognizes the harm suffered by plaintiff as a result of these events. That fact, however, while regrettable, does not alter our conclusion here.

    D.    Conclusion

For these reasons it is respectfully recommended that defendants' motion for judgment on the pleadings [Dkt. 22] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/ s/ Amy Reynolds Hay
United States Magistrate Judge

Dated: 30 April, 2009

cc:    The Honorable Joy Flowers Conti
       United States District Judge

       All Counsel of Record by Notice of Electronic Filing